EDWARD KEARNEY, executor of General Philip Kearney, deceased, *vs.* AGNES KEARNEY and others.

1. A testator, by his will, gave and bequeathed as follows: " I give and bequeath to Susan K. the sum of $10,000, to be paid to her on her reaching the age of sixteen years." *Held*, that the legatee takes a vested interest in the legacy, liable to be defeated by her death before reaching the age of sixteen years; and that she is entitled to interest on the legacy from the death of the testator.

2. The codicil to the will contained the following clause: " I do hereby devise to my daughter, Virginia, lately born to me, $500 per annum during her natural life, to be paid to her quarterly in advance by my executor, commencing with her attaining her fifteenth year." *Held*, that Virginia is not entitled to maintenance out of the testator's estate; she has no interest in the estate beyond the annuity itself, which cannot be anticipated.

3. The codicil also contained the following clause: " It is my will that my wife shall have the right to occupy and possess my estate called Belle-grove, in New Jersey, as well as all my furniture, household goods, silver, books, paintings, statuary, and other works in the fine arts, there or elsewhere, to hold to her during her natural life and widowhood." *Held*, that this is an estate of freehold with all its rights and incidents; the gift is of the right to possess the property, real and personal, during the life of the widow, if she remain unmarried; and if she marry, during widowhood only. It necessarily involves the right to use the personal property upon the estate or elsewhere, at her pleasure. The widow is bound to repair only to the extent of preventing waste.

4. A direction to an executor, " as soon as convenient after the testator's death, to have the residuary estate allotted and set off in separate portions, and to hold the same severally in trust until the coming of age of each of the sons, and as each son comes of age, to execute and deliver to him a sufficient fee simple deed therefor," does not vest in the executor an estate in fee to be held by him in trust for the purposes specified in the will, where the manifest design of the testator was that the residuary estate should vest in his surviving son in possession and enjoyment, upon his attaining the age of twenty-one years.

5. If the trustee deem that the interest of his *cestui que trust*, the remainderman, require repairs to the estate before he comes of age, he will be authorized to repair.

6. The tenant for life and remainderman, each pay insurance for their respective interests.

7. An annuity for which there is no consideration save natural love and affection, and which the testator was under no legal obligation to pay,

creates no charge upon the estate. The fact that it was paid by the testator for a long course of years, and that he gave written instructions to his agent for its punctual payment while in life, creates no legal or equitable obligation to continue it after his death.

The bill in this cause was filed by the executor of General Philip Kearney, to determine the interest of his widow and children in his estate under certain clauses in the will; and also the rights and liabilities of the tenant for life and remainderman. The executor seeks the direction of the court in the execution of the trust, without being hostile to any of the parties in interest.

*Mr. Parker* and *Mr. Keasbey*, for the executor, cited 2 *P. Wms.* 21; 3 *Atk.* 438; 2 *Johns. Ch. R.* 614; 3 *Atk.* 716; 3 *Vesey* 10; 1 *Eq. Cases Ab.* 301; 1 *Dick.* 310; 3 *Russell* 263; 3 *Bradf.* 198; 5 *Binney* 477; 4 *Rawle* 113–19; *Saxton* 43; 2 *Beas.* 138; 1 *C. E. Green* 243; 1 *Sumner* 1; 2 *Younge & Coll.* 181; 4 *Younge & Coll.* 221; *Ambler* 395; 2 *Desaus.* 65; 1 *Cruise Dig.* 123; *Smith's Land. & Tenant* 191.

*Mr. A. O. Zabriskie*, for the widow and daughters, cited 4 *Zab.* 686; 2 *Williams on Executors* 1288; 2 *Roper on Legacies* 1257–61; 1 *Dick.* 310; 3 *Russell* 263; 1 *P. Wms.* 783; 1 *Roberts on Wills* 460–1; 2 *Atk.* 216; 8 *Paige* 331; 5 *Barb.* 324; 20 *Wend.* 53; 11 *Wend.* 298; 2 *Edw. Ch. R.* 523; 3 *Sim.* 398; 9 *Paige* 107; 11 *Vesey* 1; 1 *Bro. Ch. R.* 268.

*Mr. Frelinghuysen*, Attorney General, for John Watts Kearney, cited 3 *Atk.* 101; 2 *Williams on Executors* 1288; 1 *Cox's Ch. R.* 433; 14 *Serg. & Rawle* 238; 2 *Sneed* 512; 10 *Hump.* 30; 1 *Cruise Dig.* 104–5.

THE CHANCELLOR. The will of the testator, General Philip Kearney, among other provisions, contains the following gifts and directions, viz.

To his wife, Agnes, the sum of $3000 per annum in lieu of dower. To his son, Archibald, a devise of real, and a gift of personal estate, equal in value and amount to the real and personal estate previously settled upon his son, John Watts, in order to equalize the shares of his two sons. To his daughter, Susan, the sum of $10,000, to be paid to her on her reaching the age of sixteen years.

All the rest, residue, and remainder of his present or after acquired estate, he gave, devised, and bequeathed to his two sons, John Watts and Archibald Kennedy, to be equally divided between them, to be allotted and set off in separate portions by his executors, as soon as conveniently might be after his death; and to be held by them severally in trust until the coming of age of his sons, and as each son came of age, to execute and deliver to him a sufficient fee simple deed therefor. In the event of the death of either of his sons under age and without issue, he gave all the residuary estate to the surviving son; and if both should die under age, and without issue, he gave all the residuary estate in fee simple to his eldest male grandchild then living, on condition that he take the name of Kearney in lieu of his patronymic.

He directed his executor to allow and pay to the guardians of each of his sons $600 a year, payable semi-annually, until each of them comes of age, to be deducted from the income of his part of the estate.

He gave his executors all such powers to sell, mortgage, or lease any part of his estate, and generally to do all such acts and things as may be necessary for the good management of his estate and the fulfillment of the testator's intentions in the premises.

He appointed his cousin, Edward Kearney, of the city of New York, executor and trustee of the will.

The testator subsequently made and published a codicil to his will, as follows :

" My son, Archibald Kennedy, having departed this life, and another daughter being born to me, I do hereby make the following alterations and additions to my will:

"First. It is my will that my wife, Agnes Maxwell, shall have the right to occupy and possess my estate, called Belle-grove, in New Jersey, as well as all my furniture, household goods, silver, books, paintings, statuary, and other works in the fine arts, there or elsewhere, to hold to her during her natural life and widowhood. Should she at any time surrender its possession to my son, John Watts, to whom by reason of the death of my son, Archibald Kennedy, the same will go, she shall receive, for her life, the sum of five hundred dollars yearly, as an equivalent.

"Second. I likewise bequeath, give, and order my executors to pay to my said wife, Agnes Maxwell, one thousand dollars yearly, during her life, in addition to what is herein and by said will devised to her, to be paid as directed in my said will, in item first thereof, and on the same conditions therein expressed; my object being to enable her to reside in the place where our cherished son, Archibald Kennedy, died, and meet its expenses. But whether she reside there or not, it is my intention that she shall receive said additional yearly sum of one thousand dollars.

"Third. I do hereby devise to my daughter, Virginia, lately born to me, five hundred dollars per annum during her natural life, to be paid to her quarterly in advance, by my executor, commencing with her attaining her fifteenth year."

The will is dated at Paris, France, on the * * * day of January, 1861, and is in the handwriting of the testator. The codicil is dated at the city of Washington, on the seventeenth of March, 1862.

The testator fell in battle on the first of September, 1862, and the will and codicil were thereafter duly admitted to probate by the surrogate of the county of Hudson.

The executor and trustee asks a judicial construction of the will, and the direction of the court in the execution of his trust.

The testator left at his decease two daughters, Susan and Virginia, each under the age of fourteen years. By his will

he gave as follows: "I give and bequeath to Susan Kearney, my child by the aforesaid Agnes Maxwell, the sum of $10,000, to be paid to her on her reaching the age of sixteen years. If, however, she die before that age, this legacy to become part of my residuary estate."

The codicil contains the following clause: "I do hereby devise to my daughter, Virginia, lately born to me, $500 per annum, during her natural life, to be paid to her quarterly in advance, by my executor, commencing with her attaining her fifteenth year."

The will contains no provision for the support or education of either of these daughters until their legacies are payable. Their mother, as guardian, claims an allowance for their present support.

The legatee takes a vested interest in the legacy of $10,-000, liable to be defeated by her death before reaching the age of sixteen years. If she die before that time, the legacy sinks into the residue. As a general rule, legacies, like debts, draw interest from the time they are payable. But when the legatee is an infant child of the testator, and no provision is made for its support before the time fixed for the payment of the legacy, interest on the legacy will be allowed from the testator's death, by way of maintenance. 1 *Eq. Cas. Ab.* 301; *Incledon* v. *Northcote*, 3 *Atk.* 438; *Harvey* v. *Harvey*, 2 *P. Wms.* 21; *Lupton* v. *Lupton*, 2 *Johns. Ch. R.* 614; *Jordan* v. *Clark*, 1 *C. E. Green* 243. The exception extends only to the infant child of the testator, or to one toward whom the testator has assumed a paternal relation. It extends to no other relation, nor even to an adult child. It is founded upon the natural obligation of the father to provide a present support for his infant children, and upon his presumed intention not to deprive them of such support. *Crickett* v. *Dolby*, 3 *Vesey* 10; *Dawes* v. *Swan*, 4 *Mass.* 215; *Sullivan* v. *Winthrop*, 1 *Sumner* 1; *Roberts* v. *Malin*, 5 *Indiana* 18; *Brinkerhoff* v. *Merselis' Ex'rs*, 4 *Zab.* 680; 2 *Roper on Legacies, Chap.* 20, 1246. As regards the legacy to Susan,

there is no doubt. She is entitled to interest on the legacy from the death of the testator.

It is urged that the annuity to Virginia falls within the same principle, and that she is entitled to the annuity from the death of the father. It is certain that the necessity for maintenance, and the obligation of the father to provide for it, is the same in regard to both the legatees. But the case of an annuity does not fall within the principle upon which the court gives interest upon a legacy before the time when, by the terms of the will, it is made payable. It is admitted that there is no precedent for such an allowance in the case of an annuitant. There is no fund or principal money given to the annuitant, out of which the annuity is to be paid. She has no legacy, vested or contingent, and no interest in the estate beyond the annuity itself. The will fixes with precision the time at which the payment of the annuity shall commence. There is no room for the presumption that the testator intended it should commence at an earlier period. It is suggested that the annuity is given to her during her natural life, and must, therefore, as in other cases, commence from the death of the testator, and that by the latter clause of the bequest, the testator simply intended to declare that the annuity should be paid to the annuitant in person after she attained her fifteenth year, and that previous to that time it should be expended for her support and education. But the obvious design of the testator was that the annuity should commence with the annuitant's attaining her fifteenth year, and that the payments should be made quarterly in advance. That is the natural import of the bequest. It is moreover highly improbable that the testator should have desired or intended that the annuity should be paid into the hands of a child only fifteen years of age, rather than to her mother or guardian. But it is insisted that this court may, even against the clearly expressed intention of the testator, make provision for a child out of his estate. As a general principle, I think that proposition cannot be supported.

It is well settled that a court of equity will, where it appears necessary for the support or education of an infant, anticipate his income, whether secured by will or by deed of settlement, and for this purpose they will even break into the principal of the fund. And in this class of cases the allowance will be made in direct contradiction to the terms of the will or deed. It is not a question of construction. It respects not the right of property, but the time of enjoyment. If the court deem it necessary for the support and education of an infant, or most for his advantage, that interest which has been directed to accumulate, or that principal payable at a future day, should be applied for that purpose, it will be so ordered ; and so a larger allowance will be made for an infant's support than is provided by the testator. But these cases turn, not upon the true construction of the will, or the presumed intent of the testator, but upon the power and practice of the court to control the estate of the infant for his benefit.

But the allowance of interest to an infant child of the testator, before the time fixed for the payment of the legacy, is mainly, if not exclusively, a question of construction. The court considers the parent to be under an obligation to provide not only a future but a present maintenance for his child, and therefore holds that he could have postponed the time of the payment only from the incapacity of the child to receive, but that he never meant to deprive him of the fruit of the legacy ; which fruit is the only maintenance, and which maintenance he was bound to provide. *Crickett* v. *Dolby,* 3 *Vesey* 13.

" If," says Chancellor Kent, " there be no other provision, the legacy carries interest immediately, on the presumption that the parent must have intended that the child should in the meantime be maintained at his expense." *Lupton* v. *Lupton,* 2 *Johns. Ch. R.* 628.

And Lord Redesdale says : " In the case of a father and a child having no other provision, it is considered a necessary implication that the legacy shall bear interest, because

F *

he, being bound to provide maintenance for his child, and having made provision by a legacy payable at a future day, must be presumed to intend that the child should be supported in the meantime; but this implication is ousted, if he provides any maintenance for the child, however small the maintenance and however large the legacy." *Ellis* v. *Ellis*, 1 *Sch. & Lef.* 5.

The whole current of authority shows that the settled rule of construction, that the legacy draws interest from the death of the testator, has been adopted from a regard to the presumed intention of the testator.

It has been remarked by eminent judges, that courts of justice have gone great lengths, or in the language of Lord Hardwicke, "have made a great stretch," to provide a maintenance for infants who are entitled to legacies payable at a future time. *Hearle* v. *Greenbank*, 3 *Atk.* 717; *Miles* v. *Executors of Wister*, 5 *Binney* 477. Interest has been allowed not only on vested legacies, and legacies defeasible on a future contingency, but also upon legacies in which the legatee has no interest *in praesenti*, but which are purely contingent. In *Mole* v. *Mole*, 1 *Dick.* 310, the legacy was not only contingent upon the legatee's attaining the age of twenty-one, but the interest was ordered to accumulate, and the legacy was given over upon the defendant's dying before twenty-one. It has been observed that this is as strong a case as could well arise for the application of the rule, and it is relied on by complainant's counsel as authority for the position, that the court will make provision for the infant out of the estate against the expressed intention of the testator. The master of the rolls, in deciding the case, gives no reason for his decision which will justify the inference drawn from it. He makes no allusion whatever to the direction for accumulation, nor to the fact that the decision is against the intent of the testator, but supports the decision solely by the citation of authorities to show that interest will be allowed when the legacy is contingent. The decision may, perhaps, be sustained on the ground that the presump-

tion arising from the obligation of the testator to support his infant child, is so strong as not to be overcome by the direction for accumulation, and that the order for accumulation was in fact made subject to that intent. If the case was meant to decide that maintenance will be allowed to an infant child out of the estate of a testator, against his clearly expressed intent, it is certainly in conflict with the great weight of authority.

Courts make the allowance of interest to the infant, either on the ground of carrying out the intention of the testator, or of dealing with the estate of the infant for its benefit. They do not attempt to violate the will of a testator, by disposing of his property contrary to his clearly declared intention, or by appropriating property bequeathed to A, for the support of B, though he be a child of the testator, an infant and destitute. If the testator had seen fit to leave both his infant daughters totally unprovided for, this court would have had no power to alter, however much it might regret, such disposition.

Nor can the court presume, when the testator has given to his daughter an annuity for life, commencing on her attaining the age of fifteen years, that he intended that the annuity should commence upon his death. The more natural and reasonable presumption would seem to be, where provision has been made by the testator for the mother of the child, that his intent and expectation was that the child would be maintained by the mother until the time designated for the commencement of the annuity. The executor is not authorized to anticipate the annuity to Virginia, nor to pay anything out of the estate of the testator for her maintenance.

By his will, the testator gives the residue of his estate, real and personal, to his two sons, John Watts and Archibald Kennedy, to be equally divided between them. If either die before coming of age, the residuary estate is given to the survivor. If both die before coming of age, the entire residue is given to the testator's eldest male grandchild then living, on condition that he takes the name of Kearney. The

terms of the devise are clear, and vest an inmediate estate in the sons of the testator, liable to be defeated upon a future contingency.

There are expressions in the will which indicate a different purpose, and which, it is insisted, vest in the executor an estate in fee to be held by him in trust for the purposes specified in the will. Thus the executor is directed, as soon as convenient after the testator's death, to have the residuary estate allotted and set off in separate portions, and to hold the same severally in trust until the coming of age of each of the sons, and as each son comes of age, to execute and deliver to him a sufficient fee simple deed therefor, which it is clear the executor cannot do, unless he be himself seized in fee. The real design of the testator was, that the residuary estate should vest in his surviving son in possession and enjoyment, upon his attaining the age of twenty-one years. He probably believed that in order to effect that purpose, a deed from the executor was necessary, inasmuch as the estate, until that period, was to remain in the hands and under the control of the executor, who was invested with all such powers as might be necessary for the good management of the estate and the fulfillment of the testator's intentions. The surviving residuary devisee undoubtedly takes the estate subject to all the provisions of the will. He takes the residue, only after the legacies to the wife and daughters of the testator have been provided for. And the power of the executor to control the estate, so far as may be necessary for those purposes, is unquestioned. The legal title, nevertheless, is by the terms of the will, in the residuary devisee, not in the executor.

By the codicil, this legal estate of the residuary devisee in a part of the land, is made subject to a life interest of the wife. The language of the devise is as follows: "It is my will that my wife, Agnes, shall have the right to occupy and possess my estate called Bellegrove, in New Jersey, as well as all my furniture, household goods, silver, books, paintings, statuary, and other works in the fine arts, there or elsewhere, to hold to her during her natural life and widowhood." The

interest of the widow, both in the real and personal estate, continues so long only as she remains unmarried. It is tantamount to a devise for life, provided she remains unmarried; and if she marry, during her widowhood only. The interest of the wife is not a mere easement, consisting of the right of living in the house, and occupying the personal property there, but it is an estate of freehold, with all its rights and incidents. The gift is of the right to possess the property during her life. The possession of the estate necessarily involves its use and enjoyment, the right of receiving the rents, with all the privileges incident to a tenancy for life. A gift of the rents is a devise of the land. *Kerry* v. *Derrick, Cro. Jac.* 104; *Stewart* v. *Garnett,* 3 *Simons* 398; *Beekman* v. *Hudson,* 20 *Wend.* 53; *Craig* v. *Craig,* 3 *Barb. Ch. R.* 76; 4 *Kent's Com.* 536.

The testator might undoubtedly have restricted the widow to the mere privilege of occupying, or residing in the house, and of using the personal property there, and not elsewhere. Such may have been his intention, but certainly no such restrictive words are used, nor is there anything in the will from which such intention can be legitimately inferred. There is no restriction whatever, express or implied, upon the use of the furniture. It is a gift of the right to possess the personal property for life or during widowhood, and necessarily involves the right of using it there, or elsewhere, at her pleasure. *Marshall* v. *Blew,* 2 *Atkyns* 217. It is worthy of remark, that the right conferred is not the right to *reside* in the *mansion-house,* but to occupy and possess the estate called Bellegrove. In the next clause of the codicil, the testator bequeathes to his wife an annuity of $1000 during her life, in addition to what he had previously bequeathed to her, his object being (in the language of the will) "to enable her to reside in the place where our cherished son, Archibald Kennedy, died, and meet its expenses." But whether she reside there or not, she shall receive the additional yearly sum of $1000. The annuity was given to enable her to *reside* in the *house,* but it was left optional with her to

reside there or not. The gift of the land and chattels, as has been said, was much broader than a mere right of *residence*. It is a gift of the right to possess the estate and chattels, and to hold to her during her life and widowhood. No restriction is imposed in regard to her residence. None will be implied. It can be imposed only by the use of clear and unequivocal terms. Courts lean strongly against such restriction, in favor of the widow's right.

In *Holme* v. *Harrison*, 2 *Wharton* 283, the words of the will were, " my wife to have a *house to live in* and garden." It was held that she took an estate for life.

In *Musthoff* v. *Dracourt*, 3 *Watts* 240, the testator, after reserving two rooms for the use of W. during life, used this language : " I desire that the widow may have the choice of those two rooms, which shall the best suit her, because I desire that the said W. may be sure of a shelter during the time she may have to live." It was held that W. took an estate for life, and not a mere easement in the property.

Though not apparent upon the pleadings, it was admitted upon the argument, that the estate called Bellegrove, consists of one hundred acres of land, more or less. That there are upon it several tenements besides the mansion-house and its out-houses and dependencies, which the testator, during his life, was in the habit of leasing to tenants. Assuming this as an admitted fact, it seems to render the construction of the devise free from all doubt. The devisee clearly cannot occupy several tenements by personally residing in them. She cannot have the benefit of the devise, nor possess the Bellegrove estate in any other way than by taking an estate for life, which she may occupy either by her tenants, or in person.

The widow takes the Bellegrove estate, with all the incidents of a tenancy for life. She may not commit actual or *permissive* waste. To that extent only she is bound to repair. If the trustee deem that the interest of his *cestui que trust*, the tenant in remainder, require other repairs to the estate

before he comes of age, to that extent he will be authorized to repair.

The tenant for life and remainderman, each pay insurance for their respective interests. The estate of the infant can in no wise be benefited by insuring the life estate of the widow.

The expenses of removing the goods from Paris to Bellegrove, having been ordered by the testator in his life time, is clearly a debt of the estate, and must be paid by the executor.

Annuities secured by the bond of the testator or otherwise, and for which his estate is liable, must be paid by his executor. But an annuity for which there is no consideration, save natural love and affection, and which the testator was under no legal obligation to pay, creates no charge upon the estate. The fact that it was paid by the testator for a long course of years, and that he gave written instructions to his agent for its punctual payment while in life, creates no legal or equitable obligation to continue it after his death. The trustee has no authority to continue the payment of such annuity.