Complainant, as executor and trustee of the will of Frank H. Little, late of South Orange, seeks the instructions of the court. Mr. Little owned a farm at Vernon, Sussex County, the Little homestead, which had been in his family since 1830. By deed dated May 24th, 1937, he and his wife conveyed the property to himself and his nephew, Clarence J. Little, as trustees under a trust agreement of even date. The trust is questioned on several grounds; if it be invalid, the res is part of the estate of which testator died seized.
The trust agreement recites that "the said Frank Hoyt Little is desirous of maintaining said Homestead for the benefit of succeeding generations and that it may be improved and added to, and carried forward in honor of the name and family traditions." He had no children himself but his nephew, Clarence, had a son Joseph, a baby two years old, and the only male Little of his generation. The agreement declares the trust, or the principal trust in these words:
"This property is granted in trust for the benefit of Joseph Frank Little, son of the said Clarence J. Little and Mary Little, for and during the term of his natural life and on his death in trust for the benefit of the then heirs-at-law of the said Joseph Frank Little. This trust shall continue for the lifetime or until the resignation of Frank Hoyt Little, Clarence J. Little and Mary Little, and the survivors and survivor thereof, and upon the death or resignation of the last survivor shall cease and terminate, and said proceeds and title thereto shall rest in Joseph Frank Little for and during the term of his natural life and upon his death, the remainder to his heirs-at-law." *Page 548 
The estate or interest of the child Joseph is subject to certain other interests. Mr. Little reserved or granted to himself and wife, and the survivor, and to Clarence and his wife, and the survivor, with the members of Clarence's immediate family, the right to live on the homestead and to enjoy for their personal use, without charge "the produce and facilities of said farms [other than the cash income therefrom]." The agreements stipulated that the income from the farm should be banked and that any excess above $500 in the bank account at any time should be divided three-quarters to Clarence personally, and one-quarter to Frank. But if Clarence should so elect, all the excess income "may remain in said trust account or be used in the maintenance or improvement of the said property, buildings, fences, machinery, equipment and stock."
The provisions for the personal benefit of Frank and Clarence Little and their families may be construed as creating equitable life estates or easements in gross. While a sole trustee cannot be the sole beneficiary, since the equitable title would merge in the legal title, one of several beneficiaries may be the trustee.Restatement — Trusts, § 99; In re Vreeland, 66 N.J. Eq. 297; Inre Thurston, 104 N.J. Eq. 395; Morgan v. Murton, 131 N.J. Eq. 481.
The settlor, Mr. Little, reserved the right at any time during his life to revoke the trust and resume title to the property. The reservation does not invalidate the trust. Restatement —Trusts, § 37; Mayer v. Tucker, 102 N.J. Eq. 524.
It is argued that the trust in favor of Joseph and the persons described as his heirs is too vague to be enforceable and hence that the trust fails. A declaration that certain property is held in trust for the benefit of a named person, is a complete and specific declaration of an inactive or passive trust. EaglesBuilding and Loan Association v. Fiducia, 135 N.J. Eq. 7. The trust under consideration is not a passive trust, however, since the trustees are charged with the duties of managing, farming and caring for the property. The entire equitable title is given to Joseph for life, remainder to those persons who, at his death, are his heirs, excepting, however, such beneficial interests as are expressly, or by *Page 549 
proper implication, given to others. It may be that questions will arise concerning these excepted interests, but the problems will not be unsurmountable. The terms of the agreement are sufficiently certain.
It is said that the trust is testamentary in character and void because the requirements of our statute of wills were not met in its execution. This argument is based upon the rule that if the donor reserves the power to control the so-called trustee in the administration of the property, then the latter is really not a trustee but is an agent of the donor. Restatement — Trusts, §57. The donor himself became one of the trustees and as such trustee was given a large share in the power of management of theres. But this power resided in him as trustee and not as donor. As donor, he reserved no powers beyond those above indicated. Joseph and Frank became trustees, not agents, and so the statute of wills does not govern.
The suggestion that the trust violates the rule against perpetuities, cannot be sustained, since all estates, legal and equitable, will vest at latest, upon the death of the survivor of Joseph, Frank, Clarence and Mary. Camden Safe Deposit and TrustCo. v. Scott, 121 N.J. Eq. 366.
One question of interpretation of the trust is presented. The agreement provides that one-quarter of the accumulated cash income in excess of $500 "shall be paid to and enjoyed by Frank Hoyt Little in his individual capacity" unless Clarence elects that the income remain in bank or be used in the improvement of the properties. Does Mr. Little's interest in the income, either accumulated before his death or earned thereafter, survive and pass to his executors? Mr. Little's right to a share of the net income which had actually been received by the trustees in his lifetime, matured before his death and passed to his executor. But considering the general tenor of the agreement, I find that his estate has no interest in income accruing after his death. The one-quarter thereof to which he was entitled during his life, belongs thereafter to Joseph, the general life beneficiary.
Now to the will. Mr. Little gave to his wife for life all his personal effects not otherwise bequeathed, with power of *Page 550 
disposition, remainder to his brother and nephews and nieces. He devised to her "for and during her life the use and enjoyment" of his home in South Orange; and "in the sole discretion and determination" of his wife, directed his executors to sell the property and to hold the proceeds in trust and to pay to her the net income therefrom and any part of the principal not exceeding $2,500 in any year. He gave half of the residue of his estate, or $50,000, whichever be the larger, to his executors in trust to invest 60 per cent. thereof and pay the net income to Mrs. Little and to apply the other 40 per cent. "to the purchase of a life insurance annuity to provide for the payment of the income annually or oftener, to my wife, Tacey May Little, as she may wish, during the term of her natural life, said annuity to be purchased as soon as conveniently possible after my decease." On the death of the widow, complainant is directed to sell the house, add the proceeds to the trust fund, and divide the whole among Princeton University and Clarence J. Little, individually and as trustee of the homestead trust, in specific proportions, and subject to certain contingencies. The other half of the residuary estate, or the whole less $50,000, goes to a number of friends and relatives of testator.
Mr. Little's home was in a bad state of repair at his death; in some respects, its condition is even dangerous. The widow asks the executor to make the repairs out of the residuary estate.
The devise to the widow of "the use and enjoyment" of the residence for her life, created in her a life estate. Kearney'sEx'rs v. Kearney, 17 N.J. Eq. 59, 69; Ibid. 504. In that case as in the present one, the question of repairs arose, and Chancellor Green wrote, "She (the widow, the life tenant) may not commit actual or permissive waste. To that extent only, she is bound to repair. If the trustee deem that the interest of hiscestui que trust, the tenant in remainder, require other repairs to the estate before he comes of age, to that extent he will be authorized to repair." See, also, Camden Trust Co. v.Handle, 130 N.J. Eq. 125; 132 N.J. Eq. 97.
A life tenant must make such ordinary repairs as are *Page 551 
necessary to preserve the property from decay. But "he is not bound to expend extraordinary sums for that purpose. If a house is uncovered or ruinous when the tenant takes possession, he will not be made liable by suffering it to remain so." 1 Washburn —Real Prop. 115. In the case before me, it appears that the furnace at testator's death was already old, rusted and dangerous. Ordinary repairs are not the remedy; a new furnace should be installed at an estimated cost of $375. The leaders and gutters have reached a stage, where mere patching is a waste of money. The widow is not obligated to make the necessary restorations.
We have then a situation where it is necessary to spend a considerable sum to preserve the property and where the life tenant is not in duty bound to make the expenditure. Clearly the trustee may be authorized to make it, if he has trust funds available, since one of the primary functions of a trustee is to preserve the trust property. Restatement — Trusts, § 176.Annett-Mahnken Realty Co. v. Gollin, 110 N.J. Eq. 469;Schulting v. Schulting, 41 N.J. Eq. 130; Kearney's Ex'rs v.Kearney, supra. It seems proper to direct the complainant to expend not more than $1,000 for such extraordinary repairs as are really necessary. If this is not done, the house is apt to deteriorate with increasing speed, to the eventual loss of the remaindermen. While, if the money is wisely spent, remaindermen as well as life tenant will gain. The money must be taken from that half of the residue of which the widow has the income for life; it cannot be taken from the other half since the distributees thereof have no interest in the house.
There are two kinds of annuities which run for the life of a person. In one, the issuing company is only obligated to pay the annuitant a certain amount periodically during life. In the other class of annuity contracts, payments during a certain number of years are guaranteed and if the annuitant dies within that time, the payments are continued to the owner of the remainder interest until the period of years elapse, or else a lump sum settlement is made. The first class of annuity yields the larger amount to the annuitant in proportion to the purchase price or capital invested. Mr. *Page 552 
Little sought to offset the low yield of investments by providing that a part of the trust fund should be used to purchase an annuity. He intended that his wife should have as large a return as possible. The executor will be instructed to buy an annuity of the class first described.
Several of the legatees are misnamed. There is a bequest to Mr. Little's niece "Mrs. Agnes Burns" and her three children, Madeline, Allen and Barbara. Testator had no niece named Burns, but he had one named Mrs. Agnes Dunn, who had three children with the Christian names above mentioned. He also gave a bequest to "Elsie Greves Whinnery, formerly my efficient secretary." His secretary was Miss Elsie Greves, and became by marriage Mrs. MacWhinney. There is no doubt as to the legatees intended and they will receive the bequests. Acton v. Lloyd, 37 N.J. Eq. 5.