## All State Industries, Inc. v. H.E. Stoudt & Sons, Inc. (No. 1)

*F. Jefferson Bragdon,* for movant.

*Thomas R. Wright* and *E. Keller Kline, III,* for First National Bank of Allentown.

*Mikal H. Frey* and *John P. Panneton,* for Internal Revenue Service.

ROSS, E., *J.,* May 3, 1978—All State Industries, Inc. has asked for summary judgment to be entered against the Federal Internal Revenue Service and the First National Bank of Allentown on the ground that an escrow fund was held in trust solely for the benefit of All State and other subcontractors on the Grant's Plaza project.

The case arose as an interpleader action in which a fund of $77,966.23 was deposited into this court by Western Pennsylvania Abstract Company. The fund had been held in escrow by the company pursuant to an agreement between the owner of a shopping center (Grant's Plaza) in Moon Township, Allegheny County, Pa., and the general contractor who built the center, H.E. Stoudt & Sons, Inc. The fund represents the final payment on the building contract. It was set aside for the "purpose of satisfying various liens and claims according to law."

At the time the escrow fund was created, a

number of claims and liens had been asserted against the owner, general contractor Stoudt and the shopping center by several subcontractors including All State Industries, Claremont Painting and Decorating Company, Inc., McGee Masonry, Inc., W.G. Tomko Plumbing Company, and J.A. Battle Company, and also by the Internal Revenue Service and the First National Bank of Allentown.

The Internal Revenue Service claim is based on an assessment against Stoudt for unpaid withholding and other Federal taxes. Several notices of lien were filed in Lehigh County prior to the escrow agreement, the earliest on October 20, 1971.

Prior to the filing of the Federal tax lien, the First National Bank of Allentown perfected a security interest in Stoudt's accounts receivable on September 18, 1971, by filing in Dauphin County and in Lehigh County.

The basis of the motion for summary judgment is that the escrow fund created a trust solely for the benefit of All State and the other subcontractors and it is argued that the Federal government and the bank are not entitled to participate in any distribution thereof. In the alternative, it is argued that the claims of the subcontractors are superior to those of the bank and Internal Revenue Service.

The first issue is whether the escrow fund was held in trust for the subcontractors. The contract between Stoudt and the owner required Stoudt to discharge any liens of subcontractors. If any lien were not so discharged the owner might discharge it and deduct any sums so paid from the contract balance. The intent of the parties (the owner and Stoudt) was to clear the title for sale of the property. Thus the money was held for the benefit of the subcontractors: Warrington v. Mengel, 41 Pa.

Superior Ct. 362 (1909). Pennsylvania law recognizes that an owner has an equitable obligation to see that subcontractors are paid: Jacobs v. Northeastern Corp., 416 Pa. 417, 426, 206 A. 2d 49 (1965); Atlantic Refining Company v. Continental Casualty Company, 183 F. Supp. 478 (W.D. Pa. 1960); Adelphia Automatic Sprinkler Company v. Commonwealth Land Title Insurance Company, no. 75-1469, (D.C. E.D. Pa.).

The answer to the question posed in the prior paragraph is in the affirmative. There was a trust impressed on the escrow fund for the benefit of subcontractors.

The subcontractors (the claimants who supplied labor or material for performance on the contract) assert a superior interest to the Federal government and Allentown bank which claim solely through an assignment of or liens against the contractor's property interest in the balance. The Federal claim and that of the bank depend upon Stoudt's having had a property interest in the contract retainages. In the final invoice and release Stoudt indicated it had no such interest therein. The contract provided that no payment would become due unless the contractor delivered to the owner a complete release of liens, which was not done. Nor were the subcontractors paid the amounts due them by Stoudt.

Stoudt failed to fulfill the express condition precedent to its entitlement to the contract balance and it breached the provision requiring prompt payment to the subcontractors. If there has been an unjustified and material breach of contract by one party, the other is not obligated to perform his return promise: Restatement, Contracts, §§397, 275. Therefore, Stoudt had no property interest in the

contract balance which could be the subject of a levy by the Internal Revenue Service or of an assignment by Stoudt. A security interest could not be granted by Stoudt therein nor could there be an attachment by virtue of a judgment against Stoudt.

The Adelphia case, supra, is similar to the one at bar. In that case, the Federal District Court for the Eastern District of Pennsylvania granted the subcontractors' motion for summary judgment and declared a trust on their behalf, excluding the Federal government and the Allentown bank. The rationale was that Stoudt had only a contingent right to the contract balance not sufficient to support the Internal Revenue lien or the bank assignment. The subcontractors could assert a right to the fund.

Trusts for subcontractors are based on the right of the owner to withhold contract balances if there are unpaid labor and material claims and on the equitable obligation of the owner to see to the application of the withheld payments to discharge these claims. The ground for such holding is that the contract balance is not payable if the contractor has defaulted on its obligations to pay labor and materialmen. See Adelphia Automatic Sprinkler Company v. Commonwealth Land Title Insurance Company, supra; Atlantic Refining Company v. Continental Casualty Company, supra.

In the instant case, Stoudt acknowledged no property interest in the money by its final invoice and release, which makes this case more compelling than Adelphia Automatic Sprinkler Company v. Commonwealth Land Title Insurance Company, supra.

Those opposing the claims of the subcontractors argue that there was a specific provision in the

contract which stated that the owner was not obligated to pay or see to the payment of any sums to any subcontractors and that therefore the contract balance placed in escrow by Stoudt did not create a trust for the sole benefit of the claimants-subcontractors.

The Internal Revenue Service and the bank contend their claim against Stoudt arose before the contract balance was due. Since these claims together with those of the subcontractor far exceeded the amount of the contract balance and since the owner did not want to pay the money to the wrong claimant, the money was put in escrow "for the purpose of satisfying various liens and claims according to law." This purpose, the non-subcontractor claimants assert, is in contrast to the agreement in the Adelphia case cited above where there was a specific statement that the fund was to be used "to pay any contractor or subcontractor or materialmen . . ." Thus to create a trust for subcontractors only would be contrary to the terms of the escrow agreement, it is argued.

The bank and the Internal Revenue Service also contend that Stoudt had a property interest in the escrow fund which gives them a superior right to the fund.

The court in the Adelphia case, in holding that Stoudt had only a *contingent* property interest in the contract balance withheld by the owner, did not cite Charles A. Klinges, Inc. v. Camblos Construction Corp., 194 Pa. Superior Ct. 585, 168 A. 2d 916, 918 (1961), in which the contractor failed to provide the owner with a release of liens as required by the contract. Several subcontractors had not been paid in full on completion of the contract. Plaintiff sub-

contractor obtained a judgment against the contractor and served the owner with a writ of attachment execution. The owner defended the attachment on the basis that it did not owe the contractor on the unpaid balance otherwise due because the contractor had not provided a release of mechanics' liens. At the time of the attachment the statute of limitations for the filing of mechanics' liens had expired. The court found for the subcontractor-plaintiff stating that since the statute of limitations had run there could be no liens and the contractor had a right to the money. The subcontractor could stand in the shoes of the contractor and sue the owner.

The non-subcontractor claimants argue that Stoudt had a property right in the fund to which their claims attached. Stoudt failed to provide a release of liens and the mechanics' liens were stricken by reason of the no-lien agreement previously filed of record. But the claimants here, unlike the Klinges claimants, are not the subcontractors who now have no lien and who are proceeding against the contract balance, but rather the claimants here are the bank and Internal Revenue which performed no contract services. Thus, Klinges is not controlling.

A closer examination of the Adelphia case shows that Maret Corporation, the owner, entered into a contract with Stoudt, the contractor, to build a K-Mart store in Lehigh County, Pa. The contract provided that Stoudt supply a waiver of liens which was filed in Lehigh County. The contract further required that as a condition of final payment, Stoudt would supply Maret with a release of all liens for the materialmen and subcontractors.

Near the end of construction Maret entered into

negotiations to sell the store to Barjay Associates. In connection with this sale, Maret on July 13, 1971, placed some $238,774.74 in escrow with a title company, which represented final payment on the contract. On October 19, 1971, and again on February 1, 1972, Internal Revenue filed liens against Stoudt.

In March, 1972, Adelphia, one of the subcontractors, filed suit in equity for $26,057.14, claiming the money should come from the escrow fund. Commonwealth Land Title Insurance Company filed an interpleader action, as did Maret. Maret claimed that as a condition precedent to making final payment, Stoudt had to provide a release of liens for all subcontractors, which it had failed to do. The matter then was removed to Federal district court.

Adelphia argued a trust was set up for the subcontractors and that Stoudt has no property right in the money that those claiming through Stoudt could enforce. The Internal Revenue and other creditors argued they had a lien against all property and rights to property belonging to Stoudt, including the fund in controversy. The K-Mart claimants (subcontractors) asserted rights to the fund superior to the Federal government and other Stoudt creditors.

The terms of the contract conditioned final payment on Stoudt's producing releases of all liens for all subcontractors on the job. Stoudt did not do so nor did Stoudt pay its materialmen and subcontractors. This was a material failure of performance not justified by the conduct of the promise, and thus the latter's duty to perform its promise justified Maret in withholding final payment and Stoudt had only a contingent right to it.

Although at common law in Pennsylvania an

owner had no liability to subcontractors, a body of case law has grown as to "public construction contracts" which qualifies the prior rule to some extent. These decisions hold that the contract and surety bond create an obligation running to the owner (a public agency) ensuring that materialmen and subcontractors will be paid. Thus the owner has an equitable obligation to see that the subcontractors are paid: Jacobs v. Northeastern Corporation, 416 Pa. 417, 206 A. 2d 49, 53 (1965).

In respect to a fund created particularly for payment of subcontractors, i.e., "for the purpose of satisfying various liens and claims according to law," it is clear the intent of the parties is to provide for persons who furnish material and labor, i.e., subcontractors. Since the contract here required Stoudt to discharge subcontractor liens and allowed the owner also to do so and subtract such payment from the contract balance, it is clear the intent of the parties in creating the fund was to take care of subcontractors' liens as a condition to Stoudt's being paid. This too makes it clear that the parties contemplated that the escrow fund was for the benefit of subcontractors only. Stoudt had no property interest to which the bank assignment or Internal Revenue lien could attach.

The motion of All State Industries for summary judgment on behalf of subcontractors and materialmen on the Grant Plaza Shopping Center will be granted as to the escrow fund created in the amount of $77,966.23 plus interest on which a trust for subcontractors and materialmen is hereby found to have been impressed. The court further will grant summary judgment against the Internal Revenue Service and the First National Bank of Allentown.

## ORDER

And now, May 3, 1978, the motion of plaintiff All State Industries, Inc. for partial summary judgment is granted and it is ordered, adjudged and decreed that a trust is declared of the sum of $77,966.23, plus interest earned thereon, as held by the prothonotary of this court, for the benefit of subcontractors and materialmen who furnished work and/or materials for the construction of the Grant Plaza Shopping Center in Moon Township, Allegheny County, Pa., for distribution among said subcontractors and materialmen in such priority as the court may hereafter determine, and subject to the petition of Plowman and Spiegel for counsel fees and costs for its action in preserving this fund for the benefit of the Grant Plaza subcontractors and materialmen. The claims of Internal Revenue Service of the Federal government and of the First National Bank of Allentown are denied.