334 Pa. Superior Ct. 72 (1984)
482 A.2d 1086
R.P. RUSSO CONTRACTORS & ENGINEERS, INC., Appellant
v.
C.J. PETTINATO REALTY & DEVELOPMENT INC., the Housing Authority of the County of Lackawanna, and the Old Forge Bank.
Supreme Court of Pennsylvania.
Submitted June 8, 1984.
Filed October 5, 1984.
*74 John J. Dunn, Sr., Scranton, for appellant.
John R. Lenahan, Sr., Scranton, for Housing, appellee.
William W. Warren, Jr., Scranton, for Old Forge, appellee.
Before TAMILIA, JOHNSON and HESTER, JJ.
HESTER, Judge:
This appeal arises from a dispute which occurred during the construction of a thirty-one unit public housing project in Dickson City, Lackawanna County, Pennsylvania. On December 18, 1980, appellant entered into a Subcontract *75 Agreement with the prime contractor and developer of the project, C.J. Pettinato Realty and Development Company, Inc., (hereinafter referred to as "Pettinato"). This subcontract provided for appellant to perform excavation and other construction-related services on the project. Appellant was to be paid two hundred twenty-four thousand two hundred ninety-five dollars ($224,295.00). Payments were to be made as the work progressed, and were to be based upon the percentage of work completed. The subcontract stated that for appellant to receive these payments, it was to submit requests for payments to Pettinato by the 24th of each month in which the work was performed. Those requests were to be incorporated into Pettinato's request for payment to appellee, Old Forge Bank on the 29th of each month. Appellant then was to receive its payment within five days from the date Pettinato received payment from appellee. Payment by appellee to Pettinato was to be made by the 30th of the following month.
Regarding the final payment to appellant which was to be the balance due on the contract, appellant was to receive its payment within seven days after Pettinato received its final payment from the purchaser, the Housing Authority of Lackawanna County.
On October 20, 1981, appellant submitted a request for payment in the amount of seventy-nine thousand seven hundred ninety-five dollars and four cents ($79,795.04).[1] Pettinato declined appellant's request for payment alleging it was untimely. Pettinato further advised that no payment would be forthcoming to appellant and that appellant would also not be paid the remaining monies due on the subcontract, $161,521.63.
Sometime following this dispute between appellant and Pettinato, additional contractors were hired to complete the work which was to have been performed by appellant.
*76 On March 5, 1982, appellant instituted suit against Pettinato, the Housing Authority and appellee. Appellant's present counsel were appointed on January 18, 1983 to represent it by the United States Bankruptcy Court for the Middle District of Pennsylvania. The suit itself contained the following allegations against appellee:
21. Defendant, the Old Forge Bank, contrary to the fiduciary relationship existing for the benefit of the subcontractors herein including Plaintiffs and contrary to the approval and inspections of its duly authorized agents intentionally, recklessly and/or negligently disregarded the welfare and interest of the Plaintiff by refusing to provide payment to, or protection of payment or surety of payment for services and work performed and material and equipment supplied pursuant to the subcontract agreements set forth in Exhibit A having reason to know of the financial injury and detriment to the Plaintiff herein.
22. Further, Defendant, the Old Forge Bank aided and abetted in the interference in the contractural relationship between the Plaintiff and Defendant, Pettinato by making payment to the Defendant, Pettinato for benefit of alternate contractors and other contractors secured to perform work and provide material and services to be performed by the Plaintiff pursuant to said subcontract agreement and further secured services of or interfered with contractors and suppliers who had an existing contract or agreement for materials or supplies with the Plaintiff without the Plaintiff's approval, knowledge or agreement knowing or having reason to know of the harm and resulting in substantial losses to the Plaintiff herein.
On April 28, 1983, appellee, Old Forge, filed preliminary objections to appellant's complaint alleging that the facts stated in appellant's complaint did not establish a fiduciary relationship between appellant and appellee nor did they set forth an interference by appellee in the contractual relationship *77 between appellant and Pettinato. Both parties briefed and orally argued the preliminary objections. The preliminary objections were sustained and appellant's complaint was dismissed. The finding that a fiduciary relationship did not exist between appellant and appellee was based upon our holding in Myers-Macomber Engineers v. M.L.W. Construction Corporation, 271 Pa.Super. 484, 414 A.2d 357 (1979).
Regarding appellant's initial tortious interference claim, the lower court held that to establish this cause of action, it is necessary to plead and prove that: 1) the acts complained of were willful and intentional; 2) they were calculated to cause damage to plaintiff in its business; 3) they were done with the unlawful purpose of causing damage and loss to plaintiff without right or justifiable cause on the part of defendant; and 4) actual damage and loss resulted. The lower court found the third element to be absent from appellant's complaint.
In this appeal, appellant raises three allegations of error: 1) whether the lower court erred in finding that a fiduciary duty did not exist between appellant and appellee; 2) whether the lower court erred in dismissing appellant's tortious interference with a contractual relationship cause of action; and 3) whether appellant should have been permitted to amend its complaint to reassert its tortious interference cause of action against appellee and further, to allege a third party beneficiary action.
Appellant, regarding its first contention, alleges that a trust relationship existed between appellee and appellant wherein appellee was acting as a trustee and should have released appellant's monies for the work it had completed on the project. In asserting this trust relationship, appellant relies on Buchanan v. Brentwood Federal Savings & Loan Association, 457 Pa. 135, 320 A.2d 117 (1974). In Buchanan, supra, our Supreme Court stated:
It is well settled that no particular form of words or conduct is necessary to create a trust. Provident Trust Co. v. Lukens Steel Co., 359 Pa. 1, 58 A.2d 23 (1948); Bair v. Snyder County State Bank, 314 Pa. 85, 171 A. *78 274 (1934); Restatement (Second) of Trusts, § 24 (1959). Neither the presence nor the absence of the words "trust", "trustee", or "beneficiary" is determinative of an intention to create a trust. Thompson Will, 416 Pa. 249, 254-255, 206 A.2d 21, 25 (1965); 1 A. Scott, Law of Trusts § 24 (3d ed. 1967). The question is whether the agreements taken as a whole evidence an intent by appellants "to impose . . . upon a transferee of the property equitable duties to deal with the property for the benefit of another person." 1 A. Scott, Law of Trusts § 24, at 192 (3d ed. 1967); see Restatement (Second) of Trusts § 2 (1959). "To determine whether there is a trust we are to look, not at the title given, but at the powers and duties conferred." Sheets' Estate, 52 Pa. 257, 266 (1866). See McClain Estate, 435 Pa. 408, 411, 257 A.2d 245-247 (1969); Schuldt v. Reading Trust Co., 270 Pa. 360, 363-364, 113 A. 545, 547 (1921).
This Court in Vosburgh's Estate, 279 Pa. 329, 123 A. 813 (1924), provided specific guidance for the resolution of the question whether the parties intended to create a trust. There we held that
"[a] trust is a relation between two persons, by virtue of which one of them as trustee holds property for the benefit of the other. The term `trust' is a very broad and comprehensive one. Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee. . . ."

Id., 279 Pa. at 332, 123 A. at 815. Accord, In re Interborough Consol. Corp., 288 F. 334, 347 (2d Cir.), cert. denied, 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215 (1923); Andrew v. Union Savings Bank & Trust Co., 220 Iowa 712, 715, 263 N.W. 495, 497 (1935); Carpenter v. Suffolk Franklin Savings Bank, 362 Mass. 770, 291 N.E.2d 609 (1973). See 1A. Scott, Law of Trusts § 24, at 192 (3d ed. 1967).
Id., 457 Pa. at 143-144, 320 A.2d at 122-123.
In Buchanan, supra, appellants had borrowed money from appellees, who were mortgage lending institutions. *79 As security for these loans, appellants had given appellees mortgages upon real property owned by appellants, and had also executed personal bonds accompanying the mortgages. Each mortgage and bond contained a provision which required appellants to pay all taxes and assessments levied on appellants' properties, and all fire and casualty insurance premiums on said property. Further, appellants were required to pay to appellees monthly one-twelfth of the annual real estate taxes.
Appellants, in Buchanan, supra, asserted that the agreement between themselves and appellees manifested a clear intent to create a trust, with the mortgage lending institutions holding appellants' monthly tax and insurance payments in trust solely for the specific purpose of paying appellants' taxes, assessments, fire and casualty insurance. The relief sought was to require the mortgage lending institutions to account to appellants for any profits derived from their investment of said monthly payments. Alternatively, appellants argued a constructive trust should be imposed on the earnings produced by the use of appellants' monies.
Our Supreme Court held that the above pleaded facts put in issue the creation of a trust since appellants alleged that they had made monthly payments for the satisfaction of tax and other assessments pursuant to a contractual provision.
Unlike the present appeal, appellants in Buchanan gave their monies directly to the lending institutions to fulfill their obligation under the mortgage and bond. The facts in the present case are far removed from the facts in Buchanan. First the contract executed in the present case was between the developer, Pettinato, and appellant. This contract does not provide that appellant was to be compensated by appellee. Moreover, the contract entered into between appellee and Pettinato specifically provided that the appellee was only authorized to disburse the funds for the project to the prime contractor, not subcontractors such as appellant.
*80 We find no fiduciary relationship between appellant and appellee.
Regarding appellant's second issue concerning the alleged tortious interference of appellee with the contract between appellant and Pettinato, the lower court quite correctly stated that the following four elements must be present to establish a cause of action: 1) that the acts complained of were willful and intentional; 2) that they were calculated to cause damage to the plaintiff in its business; 3) that these were done with the unlawful purpose of causing damage and loss to the plaintiff without right or justifiable cause on the part of the defendant; and 4) that actual damage and loss resulted. Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895 (1971).
As previously mentioned, appellant alleges the following facts in regard to its claim of tortious interference;
Further, Defendant, the Old Forge Bank aided and abetted in the interference in the contractual relationship between the plaintiff and defendant, Pettinato by making payment to the defendant, Pettinato for benefit of alternate contractors and other contractors secured to perform work and provide material and services to be performed by the plaintiff pursuant to said subcontract agreement and further secured services of or interferred with contractors and suppliers who had an existing contract or agreement for materials or supplies with the plaintiff without the plaintiff's approval, knowledge or agreement knowing or having reason to know of the harm and resulting in substantial losses to the plaintiff herein.
In dismissing this cause of action, the lower court found that the third element of the cause of action was absent, that being appellee, by its contract with Pettinato, was legally bound to make payments to Pettinato in compliance with the disbursement stages set forth in the Construction Loan Schedule. While we agree with the lower court that appellee was legally bound to make payments to Pettinato without regard to the problems occurring between *81 appellant and Pettinato, and thus appellant could not assert a tortious interference action for appellee merely making payments to Pettinato, appellee could not claim justifiable privilege if it, as appellant asserts, "secured services of or interferred with contractors and suppliers who had an existing contract or agreement for materials or supplies with the Plaintiff (Appellant) without the Plaintiff's approval, knowledge or agreement." See Paragraph 22 of Appellant's Complaint. We reiterate that we are not stating that these facts are true, but for the purpose of deciding whether appellant has stated a cause of action, we must accept the well-pled facts in appellant's complaint as being true.
Therefore, regarding that part of Paragraph 22 of appellant's complaint which alleged that appellee "secured services of or interferred with contractors and suppliers with the Plaintiff (Appellant)" this allegation, when combined with the other facts alleged in appellant's complaint, establishes an action for tortious interference with a contractual relationship.
Appellant finally contends that it should be permitted to amend its complaint to state a cause of action for tortious interference of a contractual relationship based upon appellant's assertion that appellee and Pettinato conspired to oust appellant as a subcontractor in order to reduce the cost of constructing the project. Appellant also requests permission to amend its complaint in order to assert a third party beneficiary contract.
Regarding the right to amend a complaint, our Supreme Court has stated that, "[t]he right to amend should not be withheld where there is some reasonable possibility that it can be done successfully." Glenn v. Point Park College, 441 Pa. 474, 483, 272 A.2d 895, 900 (1971). Appellant's contentions concerning the alleged tortious interference by appellee conspiring with Pettinato for the purpose of denying appellant the right to fulfill its contract in order to save money on the costs of the project is different than the first tortious interference claim set forth in Paragraph 22 of appellant's complaint which we previously decided did *82 not state a cause of action. In appellant's original assertion, it claimed that it was tortious interference for appellee merely to pay the new subcontractors that Pettinato had hired to replace appellant. Appellant's present assertion is markedly different for appellant now claims that appellee and Pettinato conspired to oust appellant from the project. This allegation fulfills the third element of the previously recited elements required to establish a cause of action for tortious interference of a contractual relationship. Thus, we will permit appellant to amend its complaint to assert this cause of action.
Concerning appellant's request to amend its complaint to assert a third-party beneficiary cause of action, appellant cites Matter of Gebco Investment Corporation, 641 F.2d 143 (3rd Cir. 1981) to support its position that this is a proper factual situation for the assertion of this action. In Gebco, supra, an electrical subcontractor on an apartment building project and the trustee for the owner each claimed the right to undisbursed construction mortgage funds in the hands of a bank. The Third Circuit Court of Appeals, in finding that a third party beneficiary cause of action existed, stated that the electrical subcontractor had completed its work on the project and both the bank and owner of the project knew that the fund held by the bank was strictly for the payment of subcontractors, such as the electrical subcontractor.
In the present case, the contract provided that appellee was to disburse portions of the mortgage loan to the contractors in compliance with the disbursement stages set forth in the Construction Loan Schedule. While it is true that monies from the disbursements given to Pettinato were forwarded to appellant as its work was completed Pettinato had full authority under the contract not to request the money if it believed that portions of appellant's contract with Pettinato had been breached. Thus, unlike the situation in Gebco, supra, where there was no dispute that the electrical contractor had fulfilled its obligations, a third party beneficiary action cannot be asserted in the present *83 action since appellant knew from the terms of its own contract between Pettinato and itself that it would not receive its progress payments if Pettinato believed that appellant had breached the contract.
Affirmed in part; reversed in part and remanded for proceedings consistent with this Opinion. Jurisdiction is relinquished.
NOTES
[1] For purposes of this appeal, we must accept as true all well-pled facts and all inferences reasonably deducible therefrom as true. Reardon v. Wilbur, 441 Pa. 551, 554, 272 A.2d 888, 890 (1971).