ANNETT-MAHNKEN REALTY COMPANY and ANSON REALTY COMPANY, complainants-appellants,

*v.*

BETSEY GOLLIN and MAX GOLLIN, defendants-respondents.

[Argued February term, 1932. Decided May 16th, 1932.]

*Messrs. Carrick & Wortendyke* (*Mr. Charles L. Carrick*), for the complainants-appellants.

*Mr. Samuel L. Hirschberg* (*Mr. James F. Minturn*), for the defendants-respondents.

The opinion of the court was delivered by

BODINE, J.

The complainants on May 16th, 1924, took title in trust to a partly constructed and mortgaged apartment house owned by the defendant Betsey Gollin. The venture having proved a loss, it sought an accounting and a sale of the premises to satisfy its lien.

The declaration of trust provided as follows: "First— To collect the rents * * *. Second—To pay * * * the interest due upon the mortgages upon said premises; to pay taxes, water rents, insurance premiums and * * * the necessary repairs and other expenses incident to the management of said building. Third—To endeavor to settle with all creditors of said Betsey Gollin and Irving Gollin, and as far as necessary to advance such sum or sums of money as may be necessary for the settlement of all such claims. Fourth—That in order to raise moneys sufficient for the settlement of said claims, if a satisfactory price is offered, to sell and convey said premises without the written consent of the said Betsey Gollin, but to render to said Betsey Gollin a just and true account of all moneys received from the sale of said premises and all expenditures. That it has been agreed between the parties hereto that said Annett-Mahnken Realty Company is to receive a commission of five per cent. (5%) for the collection of said rents; that said company is to receive a just and reasonable compensation for procuring loans—for all moneys advanced in the settlement of said claims and is to receive lawful interest upon all moneys invested in said property. To pay all other legal and necessary expenses that may become necessary in the management of said property; and also to receive such compensation as may be mutually agreed upon hereafter between the parties hereto and if they fail to agree, to receive such compensation as the chancellor or any of the vice-chancellors upon proper issue framed in the court of chancery allows to said company for its services in the capacity as trustee. Fifth—That after said premises have been freed from all

of said debts and claims, and said company has received its just compensation for the management thereof, to sell and convey said lands and premises to such person or persons as said Betsey Gollin may require by writing, free and clear and discharged of and from all and every encumbrances thereon by said company or its successors or assigns, except such as may be necessary to pay said claims."

The case came on for final hearing before Vice-Chancellor Fallon, who advised a decree, construing the third paragraph of the declaration of trust as follows: It "obligated the trustee Annett-Mahnken Realty Company * * * to pay all debts of Betsey Gollin and Irving Gollin which arose out of the construction of the apartment house mentioned therein and the mortgage and other liens thereon, and the lands upon which the said apartment house was erected, together with debts in anywise contracted which enabled said Betsey Gollin and Irving Gollin to obtain moneys used and employed in and about such construction, and for the moneys so advanced to rely upon the security of said apartment house commonly known as 880 Boulevard, Bayonne * * * for reimbursement."

The vice-chancellor directed an accounting and ordered the special master: "to make all just allowances to the defendants * * * resulting from inactivity, mismanagement and negligence on part of said complainants in the maintenance of the said trust properties. * * * To inquire and investigate to what extent the complainant * * * failed to fulfill the obligations assumed by it under and by virtue of said instrument; and to what extent the defendants have been injured by the inactivity, mismanagement and negligence of said trustee in their dealings; * * * to ascertain whether the moneys derived by the mortgage loans and otherwise upon certain properties other than apartment houses aforesaid which are commonly known as 249 Boulevard; 501 Boulevard, 772 Avenue C, 499 Boulevard and 462 Avenue C, in the city of Bayonne, were used in and about the construction of the apartment house described in the declaration of trust, and whether the mortgagees and other parties who

made such loans may be regarded as creditors of Betsey Gollin and Irving Gollin within the purview of the declaration of trust." He also found that because the defendants had not answered prior foreclosure proceedings instituted against them growing out of mortgage transactions on other properties, was no reason why they should not now assert such rights as they might have.

The third paragraph of the declaration of trust imposed upon the trustee the duty to advance such sums of money as were necessary to settle with all creditors of the Gollins. This meant certainly so far forth as the debts arose in the construction or the financing of the construction of the apartment house, or in procuring funds for that purpose. Further, the very purpose of the transaction was to complete the building and save to the Gollins what equity there might be after management and financing charges were taken care of. The danger of not taking care of all creditors, however their rights might arise, is apparent. Judgment executions and bankruptcy would, of course, prevent performance. The trustee could not more safely provide to take care of one creditor and not another if it hoped to retain title than any other owner could. The president of the complainant perfectly well understood the situation and, therefore, paid the creditors of the Gollins. A number of mortgages had been made by the Gollins covering other properties. It is claimed that the proceeds thereof were used in the construction of the apartment house at 880 Boulevard. The complainants in effecting settlement with the creditors holding such mortgages took assignments and foreclosed the same. Quite properly the learned vice-chancellor directed the master to find the facts. Obviously, since the declaration of trust imposed upon the complainants the duty to settle with creditors and conferred upon it the right only to look to the apartment house property for reimbursement, the foreclosure of liens so acquired was improper without a proper accounting. The trust agreement conferred no rights upon the trustee to be the most pressing of creditors so as to defeat such rights as the Gollins might have had under the trust agreement.

The foreclosure proceedings as between the parties deprived them of no equitable rights which they may have under the trust agreement. If the Gollins failed to pay their bonds, according to the terms thereof, foreclosure may have been proper. But their trustee is also obligated to deal with trust property, or the proceeds thereof, according to its obligation in the premises. It is urged that there was no consideration for the promise to pay the creditors. Of course, there is. The complainant took title to the property as security in order that it might do the very thing agreed to, and its compensation was fixed for the advances so to be made.

We can see no impropriety in the reference to determine the injury, if any, from the inactivity, mismanagement and negligence of the trustee. If the same exists as a fact, the court of chancery will deal with the same under the principles applicable. Obviously, the trustee must not be so negligent as to permit the property to become untenantable. The trustee owes a duty not to waste trust property. Good faith and the exercise of reasonable discretion imposes a duty to keep trust property in reasonable repair. The prudent owner does this.

So far forth as the determination below may be regarded as an adjudication that the trustee is liable for a failure to dispose of the premises by a sale, we find nothing in the proofs showing an opportunity to sell the same for an adequate price. The bounds of its duty are, of course, good faith and the exercise of a reasonable discretion. *Beam* v. *Paterson Safe Deposit and Trust Co., 83 N. J. Eq. 628.* So far as we can find the proofs indicate that at no time could the trustee, or the Gollins, secure an offer which would repay the trustee for advances made. Furthermore, offers which would have resulted in a loss were withdrawn so that the trustee even lacked the opportunity to cut losses.

The decree below will be so modified.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.