In the Matter of the Estate of SAMUEL CASTLE DWIGHT, Deceased

NO. 8772

(EQUITY NO. 3460)

APRIL 16, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

140

*Per Curiam.* First Hawaiian Bank (Appellant or Trustee), successor Trustee of The Estate of Samuel Castle Dwight, deceased, (Trust) appeals the Circuit Court's judgment surcharging the Trustee for its breach of fiduciary duties owed to the Trust and to the income beneficiaries in purchasing and maintaining a fifty-year old building, and awarding the income beneficiaries reasonable attorney's fees and costs. We affirm, but modify the amount of the surcharge.

I.

Samuel M. Dwight and Harriet D. Ellis (beneficiaries or Appellees) are the two remaining income beneficiaries of the Trust in question. The trust estate consisted primarily of real property lo-

cated on the islands of Oahu and Molokai. One of these parcels was situated on Bethel Street, Honolulu (Bethel property).

On November 12, 1968, the City and County of Honolulu filed suit to condemn the Bethel property for a public parking facility. On February 12, 1969, an order condemning the Bethel property together with a cash deposit was filed. The Trustee knew that a replacement of the condemned property would have to be found to defer any capital gains tax. On February 26, 1970, the Internal Revenue Service granted the Trust an extension to October 31, 1971 to reinvest the $290,500 received for the Bethel property.

In October of 1971, the Trustee purchased in fee simple a building and land located at 1128 Nuuanu Avenue, Honolulu (Nuuanu property). The two-story building was fifty years old and in commercial use. The purchase price of $235,000 was paid in cash and this purchase deferred the capital gains tax.

The Nuuanu property was subject to an existing five-year lease with the Salvation Army at $1,700 a month. In January of 1976, the Salvation Army notified the Trustee that it would not exercise its option to extend the lease. In the meantime, the Salvation Army continued to occupy the premises on a month-to-month basis until July 15, 1976.

On February 25, 1977, the Trustee entered into a five-year lease with Gary D. Henig at a monthly rent of $2,000 with two options to extend the lease for additional five-year periods. Henig paid the March rent and a security deposit of $2,000. The lease provided that the lessee accept the premises in "its present condition" and required the lessee to maintain the building, except that the lessee was not responsible for structural repairs or for damage caused by forces beyond the lessee's control. On February 28, 1977, Henig sought to clarify the lessor's and lessee's responsibilities concerning possible building code violations and sent a letter agreement[1] to the Trustee outlining each party's responsibility to cure any building code violations. This letter agreement was executed by the Trustee.

---

[1] The letter agreement contained the following applicable provision:
"Any building code violations which existed prior to March 1, 1977 and which were not caused by Gary Henig, Lessee [,] shall be cured by Lessor at Lessor's expense. Any Violations [sic] which occur after March 1, 1977 shall be Gary Henig's responsibility."

On June 9, 1977, the Trustee filed suit against Henig for summary possession in the District Court of the First Circuit alleging non-payment of rents. Henig filed an answer and counterclaimed against the Trustee for breach of the February 28th letter agreement. After trial, the district court held in favor of the Trust for repossession of the demised premises and for unpaid lease rent through November 30, 1977, court costs, and a portion of the Trust's attorney's fees.

On February 3, 1978, Henig filed a Notice of Appeal of the decision of the district court with the Hawaii Supreme Court. On February 28, 1978, Henig filed a petition under Chapter XII of the Federal Bankruptcy Act in the United States District Court for the District of Hawaii. Any further action on the District Court's judgment was stayed pending the resolution of Henig's bankruptcy petition. Thereafter, the Trustee and Henig settled their dispute, to-wit: Henig agreed to withdraw the appeal, and the Trustee agreed to waive its claim for back rent, costs and attorney's fees, and to sell the Nuuanu property.

At the public auction, the Nuuanu property was sold to the highest bidder at the court approved upset price of $310,000. On February 15, 1980, the Trustee received the proceeds of the sale.

We note that in the years immediately following the purchase of the Nuuanu property, the masters who reviewed the Trust's Thirty-Ninth Annual Account (11/01/70 - 10/31/71) through the Forty-Third Annual Account (11/01/74 - 10/31/75) did not question the prudence or propriety of that purchase. The master for the Forty-Fourth Annual Account (11/01/75 - 10/31/76) was the first to question the purchase of the Nuuanu property.

After a hearing on the master's report of the Trustee's Forty-Seventh Annual Account (11/01/78 - 10/31/79) and the Trustee's Response to Portions of the Master's Report,[2] the lower court held as follows: 1) the Trustee acted imprudently and negligently in its

---

[2] Normally, the trustee's "response" would be entitled "Exceptions to Master's Report." Counsel for the trustee originally argued that this proceeding was an "adversary" proceeding, not a hearing on a master's report. However, he has not taken an appeal from the court's ruling that this proceeding was a hearing on a master's report, and in fact, he acquiesced in the validity of the order of the court. See generally Lapahoehoe Sugar Co. v. Lalakea, 28 Haw. 310 (1925) (sets forth the requirements for acquiescence).

purchase of the Nuuanu property without proper inspection or investigation; 2) by making this imprudent investment of trust assets, the Trustee breached its fiduciary duty owed to the income beneficiaries; 3) once purchased, the Trustee committed a further breach of its fiduciary duty by failing to preserve and make profitable the Nuuanu property as a trust asset; 4) the Trustee was liable for the damage incurred by the Trust as a direct and proximate result of its breach; 5) the Trust suffered the following losses: Property repair expenses in the sum of $14,437.68; lost rental income in the sum of $62,490; attorney's fees and costs in the amount of $17,240.93 and lost interest in the amount of $9,670.18, a total sum of $103,838.79; 6) the Trustee be surcharged $103,838.79.

## II.

The Trustee contends the lower court erred in concluding that the Trustee acted imprudently and negligently in purchasing the Nuuanu property.

Here, the lower court found as follows: The Nuuanu property was located in an older, deteriorated, depressed area of Honolulu surrounded by bars and porno shops, and was designated for condemnation for urban renewal. The fifty-year old two-story building situated on the property was of an unprotected combustible type of construction which did not generally conform to the applicable building codes. At the time of the purchase, the building had a rusted-out marquee, leaking roof, sagging support beams, bad electrical wiring, sagging and holed plaster, missing wall and ceiling panels, water stains and rot, and termite damage along with live infestations. The Salvation Army Lease specifically noted the existence of marquee, roof and termite damages. However, the Trustee's officer handling the Trust failed to read the lease. Two officers of the Trustee inspected the building and despite noticing the marquee and termite damages and water stains, they failed to check the Salvation Army's maintenance records on the building. The Trustee neither questioned the Salvation Army about the condition of the building nor requested the tenant to sign a disclaimer of claims against the Trustee. The Trustee neither knew nor attempted to determine, whether the building conformed to applicable building, health, safety and fire code requirements. The

Trustee also did not secure any structural or termite inspections. Notwithstanding these physical defects in the building, the Trustee purchased the Nuuanu property on October 29, 1971.

Whether a trustee is liable for damages to a trust or an income beneficiary due to the trustee's breach of fiduciary duties will depend on the facts and circumstances on a case by case basis. *Hartmann v. Bertelmann*, 39 Haw. 619, 626 (1952).

The trust instrument in question vested the Trustee with "full power to invest, reinvest and keep invested in such manner as they in their discretion may think best any moneys belonging to me or to my estate that shall come into their hands other than income disposed of by this my Will." In the absence of specific directions in the trust instrument concerning the investment of trust funds, our court has held that the trustee's duties to the beneficiaries are controlled by statute. *Steiner v. Hawaiian Trust Co.*, 47 Haw. 548, 561-62, 393 P.2d 96, 105 (1964). The statute applicable to this case, Hawaii Revised Statutes (HRS) § 406-22(a) (1968),[3] codified the generally accepted "prudent investment rule." In *Steiner, supra*, our court said: "Thus, by statute, defendant as trustee was not only bound to the duty of exercising the prudence of a reasonably prudent businessman but was also bound to use the higher degree of skill that it possessed as an expert professional fiduciary. Restatement (Second), *Trusts*, § 174 (1959). The standard is absolute and is not obviated or lessened because a particular breach was honest and well-intentioned." *Id.* at 562, 393 P.2d at 105.

Our court further held that a trustee had a duty to make such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived from such investments. *Id.* at 573, 393 P.2d at 110.

---

[3] HRS § 406-22(a) reads:

In acquiring, retaining, exchanging, selling, investing, and managing property of another, including investments for account of their trusts by trust companies acting as trustees or guardians, a trust company shall exercise the judgment and care which, under the circumstances then prevailing, men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds and property considering both probable income and probable safety of capital.

Based on the lower court's findings, we conclude that the legal conclusion reached by the court is not in error.

The Trustee's neglect in determining the reasonableness of the purchase price of $235,000 based on a net return was in clear violation of HRS § 406-22(a). The Trustee was under a fiduciary duty, when it invested trust funds on a permanent basis, to consider both probable income and probable safety of capital. *See* HRS § 406-22(a). The evidence indicates that the Trustee unduly relied upon the Salvation Army Lease and nothing else, without any reasonable justification.

### III.

The Trustee contends the lower court erred in concluding that the Trustee failed to preserve and make profitable the Nuuanu property.

On this issue, the lower court found as follows: The building's poor condition was a prime factor in the Salvation Army's decision not to extend the lease. In fact, the Salvation Army regularly complained to the Trustee about the condition of the building, and at one point, it threatened to move out unless certain repairs were made. When the Salvation Army left the premises in July, 1976, the Trustee did not check the structural condition of the building and did not determine whether the building conformed to applicable building code requirements. After Henig took possession of the Nuuanu property in March of 1977, he called the building department of the City and County of Honolulu for an inspection. The building, fire and health inspectors issued notices of violation and notices to correct to the Trustee. The defects cited were bulges and holes in the walls, extensive rot damage to the wood frame, water markings, sagging and missing ceiling panels, sagging and cracked beams, leaking roof, missing plastering, bad electrical wiring, and bad plumbing. According to the Fire Inspector, the whole second floor should have been sealed off as unsafe. To correct all of the deficiencies covered in the "Notice To Correct," the estimated cost would have been $30,000 to $40,000. Relying on the February 28th letter agreement with the Trustee, Henig refused to pay any further rent and used the substandard condition of the building as the reason for non-payment. After Henig's payment of

the March, 1977, rent and the security deposit, no income was derived from the Nuuanu property until it was sold at public auction and the proceeds were received by the Trustee on February 15, 1980.

A trustee is under a duty to use the care and skill of a man of ordinary prudence to preserve the trust property. *Bishop v. Pittman*, 33 Haw. 647, 654 (1935). The trustee has the power and the duty to use the funds of the trust to keep trust assets in repair. *Martin v. Eslick*, 229 Miss. 234, 260, 90 So. 2d 635, 645 (1956). "If owing to the neglect of the trustee to keep the buildings in proper repair damage results to the trust estate, the trustee is subject to a surcharge; and if as a result of this neglect the premises become untenantable, he is liable for the loss of rentals which result." 2 A. Scott, The Law of Trusts § 176 (3d ed. 1967); *Annett-Mahnken Realty Co. v. Gollin*, 110 N.J. Eq. 469, 160 A. 400 (1932).

A trustee is also under a duty to the beneficiary to use reasonable care and skill to make the trust property productive, *Ahuna v. Dept. of Hawaiian Homes Lands*, 64 Haw. 327, 340, 640 P.2d 1161, 1169 (1982), and where the trust corpus is land, the trustee is normally under a duty to manage it so that it will produce income. *Vest v. Bialson*, 365 Mo. 1103, 293 S.W.2d 369 (1956).

Here again, based on the lower court's findings, we conclude that the court's legal conclusion that the Trustee violated its duty is not erroneous.

## IV.

The Trustee contends that the income beneficiaries are barred from contesting the propriety of the purchase of the Nuuanu property based on the doctrines of estoppel and laches. The Trustee argues that no one questioned the purchase of the Nuuanu property in the Thirty-Ninth through the Forty-Third Annual Accounts, and therefore, the income beneficiaries cannot question the purchase at this late date. This contention is without merit. *See Robinson v. McWayne*, 35 Haw. 689 (1940). *Compare Hartmann v. Bertelmann, supra.*

## V.

The Trustee contends that the surcharged amount of $103,838.79 is erroneous. We agree.

We hold that a net return of eight percent on the $235,000 would not have been an unreasonable investment. A $235,000 investment earning eight percent per annum would have yielded $18,800 per year, or $1,567 per month. The Trust held the vacant Nuuanu property from the time the Salvation Army vacated the premises to the day of the public sale for a total of thirty-nine months. For a thirty-nine month period, a rental income of $57,029.80 would have been realized, $61,113 less the $4,083.20 received from Henig. Interest on $1,567 for thirty-six months would have yielded $3,384, at the then legal rate of six percent per annum, without compounding. *See* HRS § 478-1 (1976). We hold that the expenditures totalling $9,320 for marquee, flashing, re-roofing and re-inforcing repairs, and for the cost of a structural inspection during the tenancy of the Salvation Army were reasonable under the circumstances. There is no evidence in the record to the contrary. We hold, however, that the expenditure of $5,117.28 for repairing the second floor joist and floor, and for repairing the electrical wiring unreasonable in view of the Trustee's failure to cure all of the cited code violations. The attorney's fees and costs amounting to $17,240.93 are allowed. We hold that the surcharge should have been $82,772.01.

## VI.

The Trustee's other contentions are without merit.

We hold that the findings of the lower court are not clearly erroneous inasmuch as the findings are amply supported by the evidence in the record. We affirm the lower court's conclusions, but modify the amount of the surcharge.

A surcharge of $82,772.01 against the Trustee shall be entered as the judgment.

*Harold W. Nickelsen* (*D. Scott MacKinnon* and *Cheryl A. Nakamura* with him on the briefs; *Hamilton, Gibson, Nickelsen, Rush & Moore,* of Counsel) for Appellant First Hawaiian Bank, Successor Trustee of the Estate of Samuel Castle Dwight, Deceased.

*John Francis Perkin* (*Hoddick, Reinwald, O'Connor* and *Marrack,* of Counsel) for Appellee Beneficiary Samuel M. Dwight.

*Earl S. Robinson* for Appellee Beneficiary Harriet D. Ellis.